UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Christopher Young, ) | Civil Action No. 9:19-cv-3073-BHH |
| ) | |
| Plaintiff, ) | |
| v.           ) | |
| ) | **Opinion and Order** |
| Argos USA, LLC, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant Argos USA, LLC's ("Defendant" or "Argos") motion to dismiss Plaintiff Christopher Young's ("Plaintiff" or "Young") complaint for failure to state any claim upon which relief may be granted. (ECF No. 3.) For the reasons set forth in this Order, the motion to dismiss is granted.

## BACKGROUND

Plaintiff Young formerly worked as a sales manager for Defendant Argos, a supplier of concrete for residential and commercial construction projects throughout southeast coastal South Carolina and southeast coastal Georgia. Plaintiff brought this action in the Jasper County Court of Common Pleas asserting claims for: (1) wrongful discharge in violation of public policy; (2) defamation; (3) retaliatory termination in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h); and (4) abuse of process. (Compl., ECF No. 1-2.) Defendant removed the case to this Court premised on both federal question jurisdiction and diversity jurisdiction. (ECF No. 1.)

Plaintiff began working for Argos in 2010 when Argos acquired Plaintiff's previous employer.[1] (Compl. ¶ 7.) According to Plaintiff, within weeks of taking his position as sales

---

[1] The allegations in Plaintiff's complaint are assumed to be true for purposes of the instant motion to dismiss.

1

manager for Argos, he observed alleged price fixing and other anti-competitive activities. (*Id.* ¶ 8.) Plaintiff avers that, between early 2010 and late 2011, he reported these activities to Pat Mooney, President of Argos Southeast. (*Id.* ¶ 9.) Plaintiff further avers that Mr. Mooney threatened him and told him never to give Mooney information about such activities again, so that Mooney could maintain willful blindness of illegal activity at the company. (*Id.* ¶ 10.)

Beginning in late 2011 and continuing through December 2012, Plaintiff met with representatives of the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ"). (*Id.* ¶ 11.) During these meetings Plaintiff provided information and evidence concerning what he believed to be price fixing and other anti-competitive activities by Argos and its alleged co-conspirators. (*Id.* ¶¶ 11–12.) Based on this information, Plaintiff became the relator in a *qui tam* action against Argos and the alleged co-conspirators. (*Id.* ¶ 13.) Plaintiff's complaint does not include any further facts about this *qui tam* action, such as when it was filed, where it was filed, or its outcome. (*See* Compl.) However, the public docket of the United States District Court for the Southern District of Georgia reflects that the *qui tam* action was filed on April 17, 2013 and administratively closed on December 16, 2014 after both the United States and the State of Georgia declined to intervene. *See U.S. ex rel. Young v. Lafarge S.A., et al.*, No. 4:13-cv-0095-WTM-GRS (S.D. Ga.).[2] The Georgia district court did not order the unsealing of the *qui tam* action until June 29, 2017. *Id.* Doc. 41. This was approximately one year after

---

[2] The Court takes judicial notice of the filings in the *qui tam* action, which are matters of public record. *See Phillips v. Pitt Ctr. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting the "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

2

Plaintiff was terminated on July 7, 2016. (*See* Compl. ¶ 19.) Plaintiff asserts that, despite the *qui tam* action remaining sealed while he was employed at Argos, Greg Melton and other Argos managers suspected him of being the whistleblower. (*Id.* ¶¶ 15–17.) Plaintiff further asserts that "[Argos] gained access to the *qui tam* complaint prior to it being unsealed, which confirmed Plaintiff's identity as the whistleblower." (*Id.* ¶ 16.) The complaint in the instant case does not include any further facts about this alleged access to the sealed *qui tam* complaint, such as who gained access, how the access was obtained, or when the discovery occurred. (*See* Compl.) Nevertheless, Plaintiff alleges that an unspecified individual at Argos terminated his employment "in retaliation for informing the government about [Argos'] illegal activities and for bringing an action against [Argos] under the False Claims Act." (*Id.* ¶ 19.)

On June 7, 2018, Argos filed a complaint against Young in the United States District Court for the Northern District of Georgia alleging, among other things, claims for misappropriation of trade secrets (the "Georgia Action"). (*Id.* ¶ 21.) Plaintiff asserts that Argos' complaint in the Georgia Action contained allegations which Argos knew to be false. (*Id.* ¶ 26.) Plaintiff further claims that Argos "published or caused to be published false and defamatory statements about Plaintiff, similar to those in [Argos'] civil action, in trade publications." (*Id.* ¶ 27.) Plaintiff's complaint does not identify any specific allegedly defamatory statements Argos made either in the Georgia Action or in trade publications.

Defendant filed the instant motion to dismiss on October 30, 2019. (ECF No. 3.) Plaintiff responded on November 13, 2019. (ECF No. 6.) Defendant filed a reply on November 20, 2019. (ECF No. 10.) The matter is ripe for disposition and the Court now issues the following ruling.

3

## **STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). Although the allegations in a complaint generally must be accepted as true, that principle "is inapplicable to legal conclusions," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations and quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v.*

4

*Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

### A. Claim for Wrongful Discharge in Violation of Public Policy

"[I]t is well-established that a public policy discharge claim is proper only when a plaintiff has no available statutory remedy." *Smith v. Sam Carbis Sols. Grp., LLC*, No. 4:16-CV-2320-RBH-TER, 2016 WL 11200718, at *4 (D.S.C. Nov. 15, 2016), *report and recommendation adopted*, No. 4:16-CV-2320-RBH-TER, 2017 WL 874983 (D.S.C. Mar. 6, 2017) (collecting cases dismissing public policy discharge claims where the plaintiff had an available remedy under a state or federal statute); *see Heyward v. Monroe*, 166 F.3d 332, 1998 WL 841494, *4 (4th Cir. 1998) (applying South Carolina law and holding public policy discharge claim was not allowed where employee had remedy under Title VII). In *Bury v. Force Prot., Inc.*, No. 2:09-CV-1708-DCN, 2011 WL 2535252 (D.S.C. June 6, 2011), Judge Norton dismissed the plaintiff's public policy discharge claim where it was "based on the same allegations which support[ed] his claims arising under . . . the FCA." *Id.* at *2, *report and recommendation adopted*, No. 2:09-CV-1708-DCN, 2011 WL 2550849 (D.S.C. June 27, 2011). The court stated that because the plaintiff "[sought] a remedy for his claims under . . . the FCA, . . . he may not pursue a separate state law public policy cause of action." *Id.* (citation omitted). In the instant case, Plaintiff's public policy discharge claim is indisputably based on the same allegations as his FCA retaliatory discharge claim (*see* Compl. ¶¶ 7–24, 30–33), and the public policy claim is therefore subject to dismissal.

5

The Court would note that Plaintiff's public policy discharge claim is also subject to dismissal on the independent basis that it fails to adequately allege such a claim. In South Carolina, the public policy exception to the at-will employment doctrine is narrow and only applies when an employer requires an employee to violate the law, or when the reason for the employee's termination was itself a violation of criminal law. *Lawson v. S.C. Dep't of Corr.*, 32 S.E.2d 259, 260–61 (S.C. 2000). Plaintiff's complaint does not allege that Argos required him to violate the law as a condition of his employment, or that his termination was itself a violation of criminal law. (*See* Compl.) Accordingly, Plaintiff's public policy discharge claim is subject to dismissal on this additional basis.

**B. Defamation Claim**

Plaintiff's defamation claim is premised on allegedly false statements that Argos made about Plaintiff, with knowledge that the statements were false, in the Georgia Action and in unspecified trade publications. (*See id.* ¶¶ 25–29.) As to the portion of the claim that is premised on Argos' allegations against Plaintiff in the Georgia Action, Plaintiff cannot maintain such a claim. "South Carolina has long recognized that relevant pleadings, even if defamatory, are absolutely privileged." *Pond Place Partners, Inc. v. Poole*, 567 S.E.2d 881, 893 (S.C. Ct. App. 2002) (citations omitted). "'When a communication is absolutely privileged, no action lies for its publication, no matter what the circumstances under which it is published, *i.e.*, an action will not lie even if the report is made with malice.'" *Id.* at 892 (quoting *Hainer v. American Med. Intern., Inc.*, 492 S.E.2d 103, 106 (1997)). "The absolute privilege for statements related to judicial proceedings is broad and encompasses any relevant statement including communications between counsel, statements made by counsel to a prospective witness, arguments or statements

6

by counsel in course of proceeding, any statements made by witnesses in the course of the proceedings and even statements in the course of negotiation of a settlement." *Meyer v. McGowan*, No. 2:16-CV-0777-RMG-MGB, 2018 WL 4941134, at *7 (D.S.C. July 31, 2018), *report and recommendation adopted*, No. 2:16-CV-0777-RMG, 2018 WL 4300121 (D.S.C. Sept. 10, 2018) (internal quotation marks and citation omitted). Accordingly, Argos' statements in the Georgia Action enjoy absolute privilege and cannot serve as the basis for Plaintiff's defamation claim.

With respect to the portion of Plaintiff's defamation claim premised on alleged defamatory statements in trade publications, the claim also fails. Plaintiff's complaint does not identify: (1) who made the allegedly defamatory statements; (2) when the statements were made; (3) how the statements were made; (4) the "trade publications" in which the statements were published; or (5) the substance of the alleged statements. A claim for defamation must state the alleged defamatory statement(s) as well as the "time, place, medium, and listener of the alleged defamatory statements." *Gentry v. Bioverativ U.S. LLC*, No. 2:19-CV-0873-MBS, 2019 WL 3802476, at *9 (D.S.C. Aug. 13, 2019) (internal quotation marks and citation omitted). Plaintiff's claim includes none of these things and therefore lacks sufficient factual matter to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

**C. Retaliatory Discharge in Violation of False Claims Act, 31 U.S.C. §3730(h)**

"[T]o sufficiently plead a § 3730(h) retaliation claim and thus survive a motion to dismiss, a plaintiff must allege facts sufficient to support a 'reasonable inference' of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *U.S. ex rel.*

7

*Grant v. United Airlines, Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (citations omitted). It is uncontested that Plaintiff engaged in protected activity. However, Plaintiff's claim fails to plausibly allege facts to support the second and third elements of an FCA retaliation claim.

While Plaintiff's complaint includes the assertion that Argos gained access to the *qui tam* complaint before it was unsealed (*see* Compl. ¶ 16), the assertion is conclusory and unsupported by any factual specificity regarding who gained access, when such access was obtained, or how the access came about. Thus, even accepting Plaintiff's factual allegations as true, the complaint contains insufficient information to "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Similarly, Plaintiff's theory of causation cannot survive Rule 8's plausibility requirement. Accepting his allegations as true, Plaintiff provided information to the FBI and the DOJ from late 2011 through December 2012 and became the relator in a *qui tam* action which was administratively closed on December 16, 2014. (Compl. ¶¶ 11, 13); *U.S. ex rel. Young v. Lafarge S.A., et al.*, No. 4:13-cv-0095-WTM-GRS, Doc. 27 (S.D. Ga. Dec. 16, 2014). Plaintiff's follow on allegation that Argos' terminated him in July 2016 in retaliation for the *qui tam* action is unsupported by additional facts (*see* Compl. ¶ 19) and requires an unsupported inference of causal connection. The complaint does not identify the decision-maker who fired Plaintiff, whether that individual had knowledge of the *qui tam* action, or how that individual allegedly had such knowledge. (*see* Compl.) Moreover, the year-and-a-half delay between when the *qui tam* action was administratively closed and Plaintiff's termination undercuts Plaintiff's causation theory. Simply put, Plaintiff's allegations do not "allege a factual predicate concrete enough to support his conclusory statement that he was retaliated against because of conduct protected under the FCA."

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004) (affirming district court's dismissal of FCA retaliation claim with prejudice pursuant to Rule 12(b)(6)), *abrogated on other grounds b*y *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008).

### D. Abuse of Process Claim

"The abuse of process tort provides a remedy for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 567 S.E.2d 251, 253 (S.C. Ct. App. 2002) (citing *Huggins v. Winn–Dixie Greenville, Inc.*, 153 S.E.2d 693, 695 (1967)). "A plaintiff alleging abuse of process in South Carolina must assert two essential elements: 1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the conduct of the proceeding." *Id.* (internal quotation marks and citations omitted). "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *Id.* (internal quotation marks and citations omitted). "An allegation of an ulterior purpose or 'bad motive,' standing alone, is insufficient to assert a claim for abuse of process." *Id.* at 255.

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Swicegood v. Lott*, 665 S.E.2d 211, 214 (S.C. Ct. App. 2008) (citing *Huggins*, 153 S.E.2d at 694). The "willful act" element "comprises three components: 1) a willful or overt act 2) in the use of the process 3) that is improper because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." *Food Lion*, 567 S.E.2d at 254 (internal

9

quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that Argos is using the Georgia Action "to coerce [him] to do some collateral thing which he could not be legally and regularly compelled to do." *Hickey v. Resolution Mgmt. Consultants, Inc.*, No. 2:12-CV-0707-PMD, 2012 WL 2512937, at *4 (D.S.C. June 29, 2012) (citing *Huggins*, 153 S.E.2d at 696). Rather, the complaint baldly asserts the Georgia Action is an abuse of process "in that it was intended primarily to be a privileged manner in which to libel the Plaintiff." (Compl. ¶ 36.) The only additional fact that is pled to support this assertion is that the "aforementioned lawsuit against Plaintiff was fifty-five (55) pages and contained allegations which went far beyond that mandated by the rules of pleading." (*Id.* ¶ 35.)

Plaintiff has failed to state a plausible claim for abuse of process because he has not adequately alleged the "ulterior purpose" element or the "willful act" element. Notwithstanding his conclusory assertion that the Georgia Action was intended as a means to make libelous statements against Plaintiff, the mere filing of a complaint alleging misappropriation of trade secrets does not amount to the type of collateral extortion or coercion necessary to substantiate the ulterior purpose element of a claim for abuse of process. *See Concordia Pharm. Inc. SARL v. Lazarus Pharm. Inc.*, No. 6:18-CV-1658-HMH-JDA, 2019 WL 2502212, at *7 (D.S.C. May 17, 2019), *report and recommendation adopted Concordia Pharm. Inc., S.A.R.L. v. Lazarus Pharm., Inc.*, No. 6:18-CV-1658-HMH, 2019 WL 2502189 (D.S.C. June 17, 2019) (granting motion to dismiss and holding that the filing of a lawsuit to recover damages and prevent the misappropriation of trade secrets did not constitute an abuse of process). Additionally, the fact that Argos' complaint in the Georgia Action was fifty-five pages long is immaterial and does not suffice to satisfy

10

the willful act element. "'Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Huggins*, 153 S.E.2d at 694 (quoting Prosser, Handbook of the Law of Torts, Second Edition, Section 100, pp. 668, 669). Plaintiff's complaint does not allege that Argos engaged in any unreasonable, unauthorized, or illegitimate action outside the normal bounds of litigation, and the willful act element of the abuse of process claim is not satisfied.

## CONCLUSION

For the reasons set forth above, Defendant Argos USA, LLC's motion to dismiss the complaint pursuant to Rule 12(b)(6) (ECF No. 3) is GRANTED, and this action is dismissed *with prejudice*.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

October 23, 2020
Charleston, South Carolina